**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**Case No. 5:22-cv-00139-BJB-LLK**

JADE PRUITT,                                                                                    **PLAINTIFF**

v.

MARY JACKSON, ET AL,

                                                                                               **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter has been referred to Magistrate Judge Lanny King to hear and determine all pretrial matters. [DN 18]. Before the Court is the March 10, 2026, Motion to Compel by Plaintiff Jade Pruitt, seeking production of training materials and a corporate deposition of, specifically, Jamie Hamm. Motion [DN 75]; Memo in Support [DN 75-1]. Defendants Mary Jackson and Werner Enterprises, Inc. filed a Response, [DN 76], and no reply was permitted absent leave of Court. The matter being fully briefed and ripe for review, the Court **GRANTS** in part and **DENIES** in part the Motion. In accord with the below, the Motion is denied as to the deposition of Jamie Hamm as well as the training materials. The Motion is granted as to the supplemental responses regarding recently discovered materials.

1. <u>**Background**</u>

This case involves a relatively mundane traffic collision between Plaintiff's and Defendants' vehicles. The procedural background, however, is far more elongated than the facts would seem to require. Plaintiff filed the action in state court on September 14, 2022, asserting claims of negligence against Defendant Jackson and claims of negligent hiring, training, and

1

supervision against Defendant Werner, [DN 1-1]. Defendants removed to this Court on October 5. DN 1. Defendants filed a motion to dismiss, [DN 5], Plaintiff filed an amended complaint, AC [DN 7], and Defendants moved to dismiss that complaint as well, [DN 11].

As alleged, Pruitt and Jackson were driving in Christian County, Kentucky, when Jackson's truck drifted into Pruitt's lane, forcing her into a ditch. AC ¶¶4-14. According to Werner's website, its truck's lane-departure warning system should have warned Jackson that she was drifting into Pruitt's lane, but it didn't. ¶ 18.

Following a hearing, the Court dismissed Plaintiff's claims for negligent hiring, training, and supervision on July 7, 2023, but allowed the negligent maintenance claim to proceed. [DNs 14, 17]. After rescheduling, the Court held a Rule 16 conference on December 4, 2023, and entered a scheduling order setting a fact discovery deadline for July 31, 2024, [DN 23]. Following more delays—due to difficulties in procuring medical records, counsel's medical leave, missed discovery deadlines, substitution of counsel, deposition scheduling, and various other circumstances (either within or without the parties' control)—Plaintiff filed another motion to amend her complaint on August 21, 2025, asserting additional negligence and punitive damages claims based on discovery revealing certain blemishes in Jackson's driving history (including a DUI and lack of tractor trailer driving experience) and Werner's hiring record (including having previously terminated Jackson), SAC [DN 51] ¶¶5-6. On November 21, 2025, the Court dismissed or denied leave to add a punitive damages demand and claims of negligent entrustment, retention, supervision, and training. [DN 68]. The only claims remaining are the negligent hiring and negligence *per se* claims. *Id.*

On February 23, 2026, on the fifteenth discovery status call in this matter and over three years after it commenced, the Court heard Plaintiff's arguments on what training materials she

2

was seeking and why she was entitled to depose Jamie Hamm, Werner's Vice President, specifically. The Court cautioned Plaintiff that, absent briefing on mandatory authority holding otherwise, it would adhere to its routine practice of allowing a corporation to choose its own deponent. Furthermore, the Court required that the parties meet and confer, by telephone or in person, to narrow their disputes over the training documents.

### 2. **Legal Standards**

District courts have broad discretion over docket control and the discovery process. *See In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996). "It is well established that the scope of discovery is within the sound discretion of the trial court." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993) (citation omitted). Motions to compel discovery responses are authorized where a party fails to provide proper responses to requests for production of documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

The moving party "bears the initial burden of demonstrating relevance of the information or materials requested." *Veritiv Operating Company v. Phoenix Paper Wickliffe, LLC*, NO. 5:21-CV-00170-BJB-HBB, 2023 WL 2975868, at *6 (W.D. Ky. April 17, 2023). The party resisting production "has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosures." *Guiden v. Leatt Corp.*, No. 5:10-CV-175-R, 2013 WL 12234612, at *2 (W.D. Ky. Apr. 30, 2013). "[W]hile the relevancy standard may be a liberal one, it is not a 'license to go fishing' with the hope that something might be

3

discovered." *Grayiel v. AIO Holdings, LLC*, No. 3:15-CV-821-TBR-LLK, 2017 WL 11592083, at *3 (W.D. Ky. May 2, 2017).

Rule 26(b) of the Federal Rules of Civil Procedure allows a party to obtain any "nonprivileged matter that is relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b)(1). The discovery "need not be admissible evidence to be discoverable." *Id.* This language is broadly construed to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Veritiv Operating Company*, 2023 WL 2975868, at *6 (internal citations omitted). However, the scope of discovery has limits. "On motion or on its own, the court must limit the frequency or extent of discovery ... if it determines that ... the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

### 3. **Analysis**

#### A. Deposition of Jamie Hamm

Plaintiff moves to depose Jamie Hamm, Werner's Vice President of Safety. Plaintiff provides no specific basis to conclude that Hamm has any personal knowledge of the relevant facts in this case, and her conclusory justification merely involves Hamm's position in overseeing safety and compliance at Werner:

> Jaime Hamm's deposition is both relevant and proportional to the needs of this case. Jaime Hamm was the VP of Safety and Compliance on the date of the subject accident. According to Werner's interrogatory responses, Hamm and/or her department were responsible for hiring, training and terminating Jackson. Memo at 5.

4

Plaintiff also argues that Hamm has "personal knowledge of the investigation into the subject crash, including any remediation and/or additional training that was recommended for Jackson." *Id.* This argument appears to be based on Werner's discovery responses, which stated that Hamm's department was responsible for the hiring, training, and termination of drivers. Response at 8. Because Plaintiff has failed to meet her burden of showing that Hamm's deposition as a fact witness would be relevant, *see Veritiv Operating Company*, 2023 WL 2975868, at *6, the Motion to Compel her deposition will be denied.

Plaintiff also presents no legal basis to compel this specific deposition. Despite the Court's admonition regarding the need to present compelling authority, Plaintiff cites to district court opinions from New York, Maryland, North Carolina, and Ohio, as well as a treatise. Memo at 5. None of these authorities are binding. Furthermore, none stand for the proposition that a Plaintiff may choose her corporate deponent, or that Hamm's "personal knowledge" of Werner's safety materials would make her a relevant fact witness.[1]  The cases merely state, in relevant part, that a corporation will not be relieved of their obligations under Rule 30(b)(6) simply because they have already provided fact-witness deponents. *See, e.g., Smith v. Gen. Mills, Inc.*, No. C2 04-705, 2006 U.S. Dist. LEXIS 19093, at *17-18 (S.D. Ohio Apr. 13, 2006) (Rule 30(b)(6) testimony not duplicative due to extensive fact-witness testimony).

**B.**  Training Documents

As framed by the Plaintiff, this document "dispute arises from training materials requested by Plaintiff from Werner[.]" Memo at 1. Plaintiff asks for the Court to order certain "training materials to be produced without a protective order" as well as production of certain

---

[1] Plaintiff also does not appear to have ever served a formal discovery request or subpoena. *See James v. Wash Depot Holdings, Inc.,* 240 F.R.D. 693, 695 (S.D. Fla. 2006). "Rule 37 does not authorize a court to compel [a deposition] based on an informal discovery request." *Id.*

"training videos about the employee handbook[.]" *Id.* In sum, Plaintiff seeks training materials, even though the Court has dismissed her negligent training claim. *See* [DN 68].

*Provisionally-Agreed-to Documents*

The moving party "bears the initial burden of demonstrating relevance of the information or materials requested." *Veritiv Operating Company*, 2023 WL 2975868, at *6. Plaintiff skips this step and immediately argues that Werner should have to show good cause for a protective order regarding their proprietary interest in the training materials. Memo at 2-3 (citing *Nix*, 11 F. App'x at 500). But Defendants never conceded the relevance of these training materials; rather, they appear to have decided that certain materials were perhaps of borderline relevance, not worth fighting over, and agreed to produce them in a good faith-effort to move discovery forward—but only if Plaintiff agreed to keep them confidential. *See* Response at 3-4 (allowing production of irrelevant/proprietary documents in "a good faith effort of the Defendants to resolve the ongoing discovery dispute"). It appears that Plaintiff never agreed to these terms.

The specific document requests are not properly before the Court,[2] and there is no way to determine whether they are relevant on their face. The Court cannot compel production of documents whose relevance has not been demonstrated. To do so under these circumstances would not only upset the established burden-shifting framework but also potentially punish a party for a good-faith, provisional concession that was offered as a means of narrowing the parties' disputes (as this Court and the Federal Rules require). If Plaintiff will accept the Defendants' confidentiality terms, they may exchange documents pursuant to that private agreement; however, the parties' arguments relating to a protective order, *see* Memo at 2-3;

---

[2] *See In re Hines Furlong Line, Inc.*, No. 5-22CV00095-BJB-LLK, 2026 WL 613025, at *3 (W.D. Ky. Mar. 4, 2026) (finding requests buried in exhibits but not addressed in briefing are not properly before the court).

Response at 3-5, are irrelevant, since Plaintiff has not met her burden of showing that the requested materials fall within the scope of discovery.

*Disputed Training Materials*

As the moving party, Plaintiff correctly addresses the subject of relevance as to the "disputed training materials." Memo at 3-4. Most of the argument, however, hinges on Defendants' purported "agreement" that the materials are relevant. *Id.* at 3 (relevance "has been stipulated to" and Werner "agreed that the handbook is relevant.") The "stipulation" Plaintiff references is an email from Werner's counsel. March 2, 2026 Email [DN 75-7]. The Email says that Werner was "agreeing to produce most of the training materials you all have requested. We will however need a stipulated protective agreement and/or confidentiality agreement to produce the requested materials." Email at 1. The Email goes on to list a category of "trainings we agreed are not relevant" and "[t]rainings we disagree on." *Id.* at 2. Read as a whole, the Email references materials that the parties agree are irrelevant, materials whose relevance is disputed, and materials Werner provisionally agreed to produce. A provisional agreement to production does not establish the relevance of requested materials for purposes of this Court's analysis.

Plaintiff's other arguments likewise fail to demonstrate relevance. The Werner handbook that appears to be at the center of this dispute was "used by Werner to train its drivers on various topics," and the "videos explain how the handbook was used by Werner in training." Memo at 3. Again, because the negligent training claim has been dismissed, it is not apparent how training materials are relevant to the surviving negligent hiring and negligence *per se* claims. Plaintiff argues that the Werner handbook-videos contain "materials that would establish whether Werner was negligent in hiring Ms. Jackson." Memo at 7. Plaintiff provides no factual support for this conclusory argument. Furthermore, a resisting party may rebut a potential showing of relevance.

7

*See Guiden*, 2013 WL 12234612, at *2. Werner argues that Pruitt's position "does not make factual or logical sense as the videos discussed involve the driver handbook given to drivers after they have been hired." Response at 7. The Court finds that training materials given to already-hired drivers are not relevant to Plaintiff's negligent hiring claim, and Plaintiff has not articulated how these materials are relevant to her negligence *per se* claim. "[W]hile the relevancy standard may be a liberal one, it is not a 'license to go fishing' with the hope that something might be discovered." *Grayiel*, 2017 WL 11592083, at *3.

### *Additional, Recently Discovered Documentation*

Finally, Plaintiff argues that Werner should be compelled to supplement its discovery responses based on recently discovered, "possibly relevant" documents. Memo at 4. Werner responds by stating that it "became of aware of additional documentation that may be arguably relevant to this case" following a meet-and-confer with Plaintiff's counsel. These materials include "a skill evaluation for Mary Jackson, a Pre-Trip inspection guide, and an introductory PowerPoint shown to drivers during orientation[.]" Response at 7. The Court agrees that the relevant sections of these materials should be produced and will require that the parties continue to supplement their discovery responses based on any additional, relevant materials discovered.

### CONCLUSION AND ORDER

In accord with the foregoing, the Court **GRANTS** in part and **DENIES** in part the Motion to Compel. The Motion is denied as to the deposition of Jamie Hamm as well as the training materials. The Motion is granted as to the supplemental responses regarding recently discovered materials.

8

The July 2, 2026, fact discovery deadline, and all other deadlines established in the Scheduling Order, [DN 64], remain in effect.

May 14, 2026

**Lanny King, Magistrate Judge**
**United States District Court**

9